IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONDA MWAYA,<br>   *Petitioner,*<br><br>v.<br><br>KRISTI NOEM, SECRETARY OF<br>THE DEPARTMENT OF HOMELAND<br>SECURITY, et al.,<br>   *Respondents.* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br>NO. 24-cv-2489 |

MEMORANDUM

**KENNEY, J.**                           **NOVEMBER 26, 2025**

On June 12, 2024, Ms. Monda Mwaya ("Petitioner" or "Ms. Mwaya"), a "native and citizen of Malawi," filed her Complaint before this Court seeking de novo review "of a decision by the United States Citizenship and Immigration Services (USCIS) to deny her application for naturalization under the Immigration and Nationality Act . . . . pursuant to 8 U.S.C. § 1421(c)." ECF No. 1 at 1–2; ECF No. 25-2 ("Statement of Facts" or "SOF") ¶ 1. In denying Ms. Mwaya's April 12, 2022 N-400 application for naturalization, USCIS determined, *inter alia*, that "[Ms.] Mwaya had not been lawfully admitted for permanent residence in 2009, and therefore was ineligible for naturalization," and that Ms. Mwaya "lacked the requisite good moral character in the five-year period preceding filing and continuing through the date of adjudication, because during her December 12, 2022 N-400 interview, she gave false testimony for the purpose of procuring naturalization." SOF ¶¶ 79, 89–90, 95.

Respondents and Petitioner filed cross motions for summary judgment on May 9, 2025 and May 27, 2025, respectively. *See* ECF Nos. 25, 26. The motions are fully briefed as of June 17, 2025. *See* ECF Nos. 27, 28. For the reasons that follow, the Court grants summary judgment in favor of the Respondents. Ms. Mwaya's motion is therefore denied as moot.

1

I.     **FACTUAL BACKGROUND**

   A.  *Lawful Permanent Resident Status*

On May 5, 2007, Monda Mwaya, "a native and citizen of Malawi," married Jarrett Babatunde ("Tunde") Lediju, a U.S. citizen.  SOF ¶¶ 1, 3–4.  Ms. Mwaya subsequently sought Lawful Permanent Resident ("LPR") status in 2008, affirming in submissions to USCIS that she and Mr. Lediju had been living together at 1411 North 76th Street, Apartment 4D, Philadelphia, Pennsylvania 19151, since October 2006.  *Id.* ¶¶ 7–12.  Based on Ms. Mwaya's submissions, an April 20, 2009 interview, and a variety of documents indicating a shared address, USCIS granted Ms. Mwaya LPR status on the grounds of her marriage to Mr. Lediju on May 21, 2009.  *Id.* ¶¶ 13–14.

   B.  *2013 N-400 Application*

On March 25, 2013, Ms. Mwaya submitted a signed N-400 Application for Naturalization (the "2013 N-400 Application") "based on being an LPR for at least three years and 'married to and living with' the same U.S. citizen for the last three years."  *Id.* ¶¶ 17–19.  On the 2013 N-400 Application, Ms. Mwaya represented that she and Mr. Lediju both resided at 617 North 65th Street, Philadelphia, Pennsylvania 19151, though he had "never lived" at this address.  *Id.* ¶¶ 20–22.  Additionally, Ms. Mwaya selected "No" in response to the questions on her 2013 N-400 Application inquiring whether she had "ever given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal" and "ever lied to any U.S. Government official to gain entry or admission into the United States."  *Id.* ¶ 23.  She "affirmed the accuracy and truthfulness" of her "application with her signature on March 7, 2013."  *Id.* ¶ 24.

On June 10, 2013, about three months after she submitted her application, Ms. Mwaya attended an interview with USCIS. *Id.* ¶ 25.  During the interview, Ms. Mwaya updated the shared marital address to 1411 North 76th Street, Apartment 9D, Philadelphia, Pennsylvania 19151; she supported this change with a lease document signed by both Mr. Lediju and her dated May 30, 2013. *Id.* ¶¶ 25–28.[1]  However, at the time of the June 2013 interview, Mr. Lediju "was not living with [Ms.] Mwaya at 1411 N. 76th Street, Apt. 9D," nor had he ever lived there. *Id.* ¶¶ 33–34. During the interview, Ms. Mwaya affirmed the truth of the statement contained in the 2013 N-400 Application that "she had never given false or misleading information while applying for any immigration benefit." *Id.* ¶ 35.

USCIS subsequently scheduled a follow-up interview on August 27, 2013 of both Ms. Mwaya and Mr. Lediju after "not[ing] possible discrepancies in documents [Ms.] Mwaya provided at the June 10, 2013 interview." *Id.* ¶¶ 36–44.  USCIS separated Ms. Mwaya and Mr. Lediju for individual questioning during the interview, and the two "provided inconsistent testimony regarding their married life and cohabitation." *Id.* ¶¶ 44–52.  At the end of the interview, Mr. Lediju submitted a sworn written statement while under oath stating that he did not live at the address Ms. Mwaya provided and admitted that he had previously lied under oath regarding where he lived. *Id.* ¶¶ 56–59.  After denying her misrepresentation about the marital living arrangement when confronted, Ms. Mwaya requested to withdraw her 2013 N-400 Application on August 27,

---

[1] Ms. Mwaya also provided USCIS with a 2012 joint tax return listing the previous 617 North 65th Street, Philadelphia, Pennsylvania 19151 address, as well as joint bank statements, car insurance cards, and an "undated Philadelphia Traffic Court Payment Order Reminder for [Mr.] Lediju" listing an address of 1411 North 76th Street, Apartment 4D, Philadelphia, Pennsylvania 19151. SOF ¶¶ 29–32.  The Court notes that the apartment numbers contained in the lease and the additional supporting documents differ, and at some point, Mr. Lediju may have lived in Apartment 4D. *See* ECF No. 25-7 at 69.  However, it is undisputed that he did not ever live in Apartment 9D—the updated shared marital address provided to USCIS at the June 10, 2013 interview. *Id.* at 64, 69; SOF ¶¶ 27, 33–34.

3

2013. *Id.* ¶¶ 60–64. USCIS terminated the 2013 N-400 Application on October 30, 2013 and subsequently "referred the matter to its fraud investigation unit." *Id.* ¶¶ 65–66.

### C. *USCIS Fraud Investigation*

On May 16, 2014, USCIS investigators "conducted an unannounced site visit" to an address associated with Mr. Lediju, 314 West Winona Street, Philadelphia, Pennsylvania. *Id.* ¶ 67. During this visit, Mr. Lediju "gave a signed, sworn statement to the officers stating that [Ms.] Mwaya offered him money to help her stay in the country," "he married [Ms.] Mwaya so he could use the money to help his mother," and that he never resided at 1411 North 76th Street, Apartment 4D, as "he had lived at 314 Winona Street for more than 30 years." *Id.* ¶¶ 68–72. Mr. Lediju further stated that he "never consummated the marriage" with Ms. Mwaya, and that Ms. Mwaya "would have him sign documents to help with the appearance that they were together." *Id.* ¶¶ 73–74. USCIS fraud investigators concluded, based on these sworn statements and documentary evidence previously submitted, that Ms. Mwaya and Mr. Lediju entered "a sham marriage for the purpose of circumventing immigration laws." *Id.* ¶¶ 75–76. Ms. Mwaya and Mr. Lediju divorced on November 30, 2015, with their separation date listed in the divorce filings as August 28, 2013. *Id.* ¶¶ 77–78.

### D. *2022 N-400 Application*

On April 12, 2022, Ms. Mwaya filed a second N-400 naturalization application (the "2022 N-400 Application"), on the basis that she had "been an LPR for at least five years." *Id.* ¶¶ 79–80. In her application, Ms. Mwaya responded "No" in response to the questions of whether she had "ever given any U.S. government officials any information or documentation that was false, fraudulent, or misleading," and "ever lied to any U.S. government officials to gain entry or admission into the United [States] or to gain immigration benefits while in the United States." *Id.*

4

¶¶ 81–82. She "certified the accuracy and truthfulness of her N-400 application with her signature." *Id.* ¶ 83. During her December 12, 2022 interview with USCIS regarding her 2022 N-400 Application, Ms. Mwaya "was placed under oath and asked to verify" that the responses made in the 2022 N-400 Application, as well as "any corrections made during the interview, were correct." *Id.* ¶¶ 84–85. Ms. Mwaya did not change her response to either of the foregoing questions during the interview. *Id.* ¶¶ 86–87.

On December 27, 2022, USCIS denied Ms. Mwaya's 2022 N-400 Application for three distinct reasons. *Id.* ¶¶ 88–95. First, "USCIS determined [Ms.] Mwaya was ineligible for naturalization . . . . [b]ecause she had sought to procure an immigration benefit through fraud or willful misrepresentation of a material fact by engaging in a sham marriage to [Mr.] Lediju to obtain an immigration benefit." *Id.* ¶¶ 88–90. USCIS found, *inter alia*, "that [Mr.] Lediju had told USCIS officers that he had married [Ms.] Mwaya to help her stay in the [country] in return for compensation." *Id.* ¶ 93. Next, USCIS determined that Ms. Mwaya "provided false testimony with an intent to obtain an immigration benefit" during her 2013 N-400 interview. *Id.* ¶ 94. Third, and particularly relevant to the pending motion for summary judgment, USCIS also determined that Ms. Mwaya

> lacked the requisite good moral character in the five-year period preceding filing and continuing through the date of adjudication, because during her December 12, 2022 N-400 interview, she gave false testimony for the purpose of procuring naturalization, when she stated she had never married someone in order to obtain an immigration benefit; never given false, misleading or fraudulent information to any U.S. government officials; or ever lied to any U.S. government officials to gain entry or admission into the U.S. or obtain immigration benefits while in the U.S.

*Id.* ¶ 95.

### E.  *2023 USCIS Appeal*

On February 21, 2023, Ms. Mwaya appealed this denial of her 2022 N-400 Application and appeared for a hearing on November 14, 2023 in connection with the appeal. *Id.* ¶¶ 96–97.

During the hearing, Ms. Mwaya stated "that, at the time of her first N-400 application, she and [Mr.] Lediju 'were not living together full time, [they] were on and off,' and indeed had "stopped living together full time in 2012," though Mr. Lediju "would come and go." *Id.* ¶¶ 99–100. USCIS affirmed the denial of Ms. Mwaya's 2022 N-400 Application on January 30, 2024, citing that Ms. Mwaya "misrepresented herself by engaging in a sham marriage with [Mr.] Lediju to obtain immigration benefits" and therefore "had not established that she was lawfully admitted for permanent residence on May 21, 2009." *Id.* ¶¶ 119–20. USCIS further determined that Ms. Mwaya "had not established the requisite good moral character" due to false statements made during the relevant statutory period. *Id.* ¶ 121.

### F. *Ms. Mwaya's Deposition Testimony*

Upon Ms. Mwaya's filing of the instant action, the parties engaged in deposition practice. *See generally* ECF No. 25-7. Respondents deposed Ms. Mwaya on December 5, 2024. *Id.* at 50. During her deposition, Ms. Mwaya testified that when she stated in her 2013 N-400 Application that both her and Mr. Lediju lived in Apartment 9D at the 76th Street residence, "that [statement] was not true." *Id.* at 64. Ms. Mwaya further testified that she withdrew her 2013 N-400 Application "[b]ecause [she] knew that [she] had not said the truth." *Id.* at 65. She testified: "We'd not been living together and that's why I decided to withdraw." *Id.*

## II. PROCEDURAL HISTORY

On August 13, 2024, Respondents filed an Answer to Ms. Mwaya's Complaint. ECF No. 5. The Court held a Rule 16 conference on September 19, 2024, ECF No. 11, and subsequently scheduled an evidentiary hearing for January 8, 2025. ECF No. 12. Ms. Mwaya filed an Emergency Motion to Continue the Evidentiary Hearing on December 31, 2024, ECF Nos. 15–16, which the Court granted in part and denied in part. ECF No. 17. Respondents and Ms. Mwaya

filed their pretrial memoranda on January 10, 2025 and January 14, 2025, respectively. ECF Nos. 18–19.

On March 18, 2025, the Court ordered the parties to meet and confer regarding the status of the case and submit a proposed schedule for summary judgment briefing and an evidentiary hearing. ECF Nos. 20–21. The Court thereafter set the schedule for summary judgment briefing. *See* ECF Nos. 22, 24. It also scheduled an evidentiary hearing for July 1, 2025 in the event the motions for summary judgment revealed credibility determinations as to material facts that needed to be addressed by the Court before rendering a final decision. *Id.* The Parties completed briefing on June 17, 2025, ECF Nos. 25–28, and on June 23, 2025, the Court ordered that all deadlines—including the evidentiary hearing date—be held in abeyance pending the Court's ruling on the summary judgment motions, ECF No. 29.

### III. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Indeed, "[s]ummary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170 (3d Cir. 2017), *as amended* (Sept. 22, 2017) (quoting *Wright v. Owens Corning*, 679 F.3d 101, 105 (3d Cir. 2012)) (internal quotations omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there exists a genuine issue of material fact. *Id.* It is incumbent upon the party moving for summary judgment to

"inform[] the district court of the basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (cleaned up).

The party opposing summary judgment must demonstrate more than the "mere existence of a scintilla of evidence" to defeat summary judgment. *Anderson*, 477 U.S. at 252. Likewise, "a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial," *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000), as arguments made in the briefing "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

To determine whether a genuine issue of material fact exists, the court must "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the court should grant summary judgment, as "there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up).

IV. **DISCUSSION**

The Court will grant Respondents' Motion for Summary Judgment (ECF No. 25) and deny Petitioner's Cross Motion (ECF No. 26) as moot. The Court's de novo review of the application and ultimate decision focus specifically on the false statements Ms. Mwaya made in connection

with her 2022 N-400 Application; the Court does not reach the "sham marriage" issue, as an analysis of the issue is not necessary to resolve Respondents' pending motion.

### A. *De Novo Proceeding*

Under 8 U.S.C. § 1421(c), an individual whose application for naturalization was denied may seek a de novo review of the denial "before the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c). Section 1421(c) provides that the "review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Id.*

Petitioner contends that the Court may only grant summary judgment in favor of Respondents if it "denies [Petitioner's] application in a de novo hearing." ECF No. 28 at 7. According to Petitioner, "[t]his case is ripe for adjudication before this Court, which can judge the facts, the law, the demeanor, and the testimony of Ms. Mwaya and any witnesses that may be called." *Id.* The Court construes Petitioner's statements to mean that the Court *must* hold an evidentiary hearing on Ms. Mwaya's petition prior to denying her application for naturalization. Not so. The Federal Rules of Civil Procedure "apply to proceedings for admission to citizenship to the extent that the practice in those proceedings is not specified in federal statutes and has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(3). There is nothing in 8 U.S.C. § 1421(c) to suggest the existence of "an alternative practice for review of citizenship denials such that Rule 56 is inapplicable in those proceedings." *Chan v. Gantner*, 464 F.3d 289, 295–96 (2d Cir. 2006).[2] In other words, the Rule 56 process provides the "hearing" required under 8 U.S.C. §1421(c). *Id.*

---

[2] The Third Circuit recognized the Second Circuit's decision in *Chan* in an albeit non-precedential, unpublished decision. *See Abulkhair v. Bush*, 413 F. App'x 502, 507 n.4 (3d Cir. 2011) ("The Second Circuit has noted that application of the Federal Rules of Civil Procedure is 'the norm

9

### B. *Good Moral Character*

The Court is therefore only left to determine whether there is a genuine dispute of material fact barring resolution of this case at summary judgment. Following a review of the record, there is no dispute that Ms. Mwaya does not possess the requisite good moral character necessary for naturalization. Accordingly, it will grant summary judgment in favor of Respondents on this basis and deny the naturalization application.

"To be eligible for naturalization an individual must show, among other things, that [she] is 'a person of good moral character.'" *Onyekwuluje v. Jaddou*, No. 23-1915, 2024 WL 701784, at *2 (3d Cir. Feb. 21, 2024) (quoting 8 U.S.C. § 1427(a)(3); 8 C.F.R. §§ 316.2(a)(7), 316.10). The naturalization application's requirement for good moral character extends from "the five years immediately preceding the date of the filing of the application for naturalization until the time [she] takes the oath of allegiance.'" *Id.* at *2 (quoting *United States v. Teng Jiao Zhou*, 815 F.3d 639, 643 (9th Cir. 2016)); *see also* 8 C.F.R. § 316.10(a)(1) (clarifying that the good moral character

---

under the current naturalization provision . . . and was the norm under the prior law.' It then determined that the Rule 56 process provides . . . 'the hearing required by section 1421(c).' We agree. Under the circumstances of this case, the district court did not err by failing to hold oral argument before deciding the summary judgment motion." (quoting *Chan*, 464 F.3d at 295–96) (citations omitted)); *see also, e.g.*, *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013) ("[W]e agree with our sister circuits that a 'hearing de novo' within the meaning of Section 1421(c) encompasses an FRCP 56 review on summary judgment."); *Nanje v. Chaves*, 836 F.3d 131, 134 (1st Cir. 2016) (acknowledging "district court's entry of summary judgment in favor of the government in [a] naturalization case") (citing *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013); *Chan v. Gantner*, 464 F.3d 289, 292 (2d Cir. 2006)); *Al-Hasani v. Mayorkas*, No. 20-cv-8984, 2022 WL 310204, at *1 (D.N.J. Feb. 2, 2022) ("The Court reviewed the parties' submissions and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) . . . ."), *aff'd sub nom. Al-Hasani v. Sec'y United States Dep't of Homeland Sec.*, 81 F.4th 291 (3d Cir. 2023); *Kublitski v. Thompson*, No. 17-cv-298, 2018 WL 1535212, at *2 n.1 (D.N.J. Mar. 28, 2018) ("Thus, where there are no disputed issues of material fact, the Court is not required to hold an evidentiary hearing."); *Rahman v. Garland*, 791 F. Supp. 3d 357, 363 (E.D.N.Y. 2025) ("[T]he Federal Rules of Civil Procedure apply to proceedings for admission to citizenship, and therefore a court need not conduct an evidentiary hearing in cases where there are no disputed issues of material fact." (cleaned up)).

requirement "includes the period between the examination and the administration of the oath of allegiance").

### 1. *Parties' Positions on Good Moral Character*

Respondents contend that Ms. Mwaya is ineligible for naturalization "because the record establishes that she lacks the requisite good moral character, because on December 12, 2022, she falsely denied ever lying to U.S. officials, despite doing so in obtaining LPR status in 2009 and in seeking naturalization in 2013." ECF No. 25 at 30. According to Respondents, on November 14, 2023—following USCIS's denial of Ms. Mwaya's 2022 N-400 application—Ms. Mwaya "acknowledged to USCIS officers that she and [Mr.] Lediju 'were not living together full time, [they] were on and off,' at the time of her 2013 N-400 application." *Id.* at 29. Then, during a deposition in the instant matter in 2024, Ms. Mwaya admitted under oath that Mr. Lediju "never lived at her 65th Street address or the updated 76th Street, Apt. 9D, address, and that she had misrepresented this information to officers in 2013." *Id.* Respondents aver that Ms. Mwaya's 2023 and 2024 admissions render her affirmation during the 2022 naturalization interview—that is, "that she had never lied to or provided false information or documents to U.S. officials"—false. *Id.* at 30. And, because this false testimony to officials occurred "within the statutory period for establishing good moral character for her April 12, 2022 naturalization application," she does not possess the good moral character necessary for naturalization. *Id.*

In response, Petitioner argues that "Ms. Mwaya has conceded that she did not tell the truth to Officer Descano in 2013 regarding living in marital union with Mr. Lediju. That is why she waited 8 years to apply for U.S. citizenship." ECF No. 26 at 33. Petitioner further argues that "[o]nly in these proceedings before this Court have the Respondents tacked on an allegation of misrepresentation outside of the sham marriage allegation. The Respondents have done what

11

neither of the USCIS officers did in their interviews in 2022 and 2024—asked Ms. Mwaya how she could answer 'no' to misrepresentation despite admitting that in 2013 she was not truthful about living in marital union with Mr. Lediju." *Id.*

In their Reply, Respondents highlight that "[Ms.] Mwaya admits that she misrepresented to USCIS in 2013 that she and [Mr.] Lediju were residing together at two different addresses, neither of which he had ever lived at," and "concealed" the misrepresentations in her 2022 application and interview. ECF No. 27 at 9. "Accordingly," Respondents contend, "[t]he record establishes that she lacks the requisite good moral character, because on December 12, 2022, she falsely denied ever lying to or providing false or misleading information to U.S. officials, despite doing so in seeking naturalization in 2013." *Id.* at 10.

In her reply brief, Petitioner concedes "that Ms. Mwaya's failure to say 'yes' regarding the misrepresentation at her 2022 interview would bar her from demonstrating good moral character for five years—but only if this Court denies her application in a de novo hearing." ECF No. 28 at 7. Petitioner argues that the de novo review provided by 8 U.S.C. § 1421(c) permits the Court to "view[] the application as a new application that is now before it and ripe for adjudication, without being bound by the previous USCIS decision. Ms. Mwaya will admit in court, as she did at her [deposition], that she misrepresented at her 2013 interview, and this is not a bar to citizenship since it is outside the statutory period." *Id.* at 8.[3]

---

[3] It bears mentioning that the Court is not reviewing Ms. Mwaya's application as a "new application" and therefore disagrees with Petitioner's characterization. The text of 8 U.S.C. § 1421(c) specifies that a person "may seek review of [the] *denial*" of an "application for naturalization." 8 U.S.C. § 1421(c) (emphasis added). Here, the denied application is the 2022 N-400 Application. *See* ECF No. 1 at 2 ("On April 12, 2022, Plaintiff filed an N-400 Application for Naturalization with United States Citizenship and Immigration Services ('USCIS'), which USCIS denied. Plaintiff seeks judicial review of that denial."). While the Court reviews this application de novo, the application still needs to have gone through the administrative process to come before it; therefore, it is not a brand-new application reviewed on first impression. In

12

### 2. *Ms. Mwaya Does Not Possess Good Moral Character*

The parties' briefing acknowledges that Ms. Mwaya's 2022 misrepresentations can bar her from asserting that she bears the good moral character required for naturalization. *See* ECF No. 25 at 26–30; ECF No. 28 at 7–8. This understanding aligns with the relevant statutory text and Code of Federal Regulations provision stating that "one who has given false testimony for the purpose of obtaining any [immigration] benefits" cannot "be regarded as, or found to be, a person of good moral character." 8 U.S.C. § 1101(f)(6); *see also* 8 C.F.R. § 316.10(b)(2)(vi) (an applicant giving "false testimony to obtain any benefit from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit," leads to a "[f]inding of a lack of good moral character").

There is no dispute that Ms. Mwaya (1) misrepresented her marital living arrangement with Mr. Lediju to USCIS in 2013, (2) denied in her 2022 N-400 Application that she had *ever* given false information or lied to a U.S. official, and (3) failed to amend those denials while under oath at her 2022 N-400 Application interview while attempting to gain citizenship. *See* ECF No. 25-7 at 65; SOF ¶¶ 81–87. Her admitted 2013 misrepresentations were made both in a signed submission and under oath during her June 2013 interview with USCIS. *See* SOF ¶¶ 17–24, 35. Then, in her 2022 N-400 Application, Ms. Mwaya answered "No" to the questions of whether she had "ever given any U.S. government officials any information or documentation that was false, fraudulent, or misleading," and "ever lied to any U.S. government officials to gain entry or

---

addition, the underlying administrative record still provides evidence—though not the only evidence—that the Court considers in conducting the required de novo review. *See Saliba v. Att'y Gen. of U.S.*, 828 F.3d 182, 189 (3d Cir. 2016) ("[J]udicial review of naturalization denials is not *limited* to any administrative record but rather may be on facts established in and found by the district court de novo." (cleaned up) (emphasis added)). Indeed, the 2022 N-400 Application, the administrative record regarding that application, and the discovery in the instant matter comprise the record before this Court.

13

admission into the United [States] or to gain immigration benefits while in the United States." *See id.* ¶¶ 79–83. At her 2022 N-400 Application interview, she "was placed under oath and asked to verify that her N-400 responses, including any corrections made during the interview, were correct." *Id.* ¶ 85. She "did not change" either of her responses while under oath. *Id.* ¶¶ 86–87. She signed an N-400 Attestation form with the following statement: "I swear (affirm) and certify under penalty of perjury under the laws of the United States of America that I know that the contents of this form N-400, Application for Naturalization, subscribed by me, including the corrections displayed above, are complete, true, and correct." ECF No. 25-3 at 69.

In light of the foregoing, the Court finds that there is no genuine dispute of material fact that the 2022 misrepresentations were false and fall within the statutory period for establishing good moral character.[4] Ms. Mwaya herself concedes that her "failure to say 'yes' regarding the misrepresentation at her 2022 interview would bar her from demonstrating good moral character

---

[4] As explained above, the good moral character requirement extends from the five years preceding the application to the oath of allegiance. *See Onyekwuluje*, 2024 WL 701784, at *2. Although it is unclear from Petitioner's briefing what she considers to be the relevant date of her application for naturalization for purposes of the calculation, her argument fails under any circumstance. *Compare* ECF No. 26 at 9 ("The parties agree that this case involves de novo review of USCIS's denial of petitioner Monda Mwaya's N-400 application for naturalization filed on April 12, 2022.") *with* ECF No. 28 at 8 ("The Court views the application as a new application that is now before it and ripe for adjudication . . . ."). Assuming first that the relevant application is the 2022 N-400 Application filed on April 12, 2022—the Court's position—the timeframe for good moral character would extend from five years prior to that application, that is, 2017, to the oath of allegiance. The misrepresentation to USCIS occurred in December 2022, prior to the decision on the application, and therefore falls within this timeframe. Assuming next that the relevant application date is the date Ms. Mwaya filed the instant action, the time for good moral character would then extend from the five years prior to June 12, 2024—that is, June 2019—to the oath of allegiance. *See* ECF No. 1. Again, the 2022 misrepresentation to USCIS falls squarely within this timeframe. Finally, assuming that the date of application is the date of Petitioner's proposed evidentiary hearing in this action, the 2022 misrepresentation to USCIS would surely fall within the five years preceding any such hearing. In other words, Ms. Mwaya's 2022 misrepresentation bars her under *any* circumstance from arguing she has maintained good moral character during the relevant statutory period.

for five years—but only if this Court denies her application in a de novo hearing." ECF No. 28 at 7. The current summary judgment proceeding is within the linear scope of the de novo hearing process on the application, and there is no dispute that Ms. Mwaya does not possess the requisite good moral character for naturalization. To then proceed to a full evidentiary hearing when there is no feasible way for the Court to approve Ms. Mwaya's application for naturalization would be illogical. Indeed, "[o]nce it has been determined that a person does not qualify for citizenship, . . . the district court has no discretion to ignore the defect and grant citizenship." *I.N.S. v. Pangilinan*, 486 U.S. 875, 884 (1988) (cleaned up). Therefore, even if the Court were to "judge the facts, the law, the demeanor, and the testimony of Ms. Mwaya and any witnesses that may be called" at an evidentiary hearing and find that Ms. Mwaya's marriage to Mr. Lediju was in fact *bona fide*, ECF No. 28 at 7, it cannot ignore that Ms. Mwaya made a false representation to USCIS in 2022, both in her N-400 Application and under oath at the corresponding interview. Its conclusion would be the same following the hearing as it is now, as the undisputed factual record shows that Ms. Mwaya does not possess good moral character for purposes of establishing her eligibility for naturalization.

* * *

Accordingly, the Court grants Respondents' Motion for Summary Judgment and denies Ms. Mwaya's application for naturalization.

### V.     CONCLUSION

The Court **GRANTS** Respondents' Motion for Summary Judgment (ECF No. 25) and therefore **DENIES** Petitioner's Motion for Summary Judgment (ECF No. 26) as moot. An accompanying order will follow.

BY THE COURT:

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**

16